Kendra KELLEY, Appellant,

v.

John S. POORE, Appellee.

No. 2008–CA–002409–MR.

Court of Appeals of Kentucky.

Dec. 18, 2009.

Discretionary Review Denied by
Supreme Court Jan. 14, 2011.

Charles W. Gorham (argued), R. Grant Stephens, Lexington, KY, for appellant.

John W. Walters, Melissa Thompson (argued), Lexington, KY, for appellee.

Before COMBS, Chief Judge; MOORE, Judge; LAMBERT,[1] Senior Judge.

## OPINION

COMBS, Chief Judge.

Kendra Kelley appeals from a jury verdict and judgment dismissing her personal injury claim against John S. Poore. The action was filed following a collision between a personal watercraft (PWC) operated by Kelley and Poore's fishing boat. Kelley argues that the trial court erred by refusing to direct a verdict and alleges as error three grounds: (1) Poore's failure to keep a proper lookout; (2) the court's failure to instruct the jury on the federal rules of the waterway; and (3) the court's admission of evidence tending to suggest that Kelley lacked experience operating the PWC while Poore was an avid boater. As we disagree with each contention, we affirm the judgment.

The collision between the two vessels occurred at mid-day on July 1, 2007, on Kentucky's Lake Herrington. Testimony indicated that nineteen-year-old Kelley had been operating her boyfriend's PWC for only a few minutes when she became concerned for her safety. Kelley testified that she was near the middle of the lake in very choppy water when she decided to head for the shoreline. She indicated that she had been travelling parallel to the shore for approximately two to three minutes when she looked over her left shoulder; she was immediately struck by Poore's fishing boat. Kelley testified that Poore collided with her PWC on the left side and that she suffered a severe fracture of her lower right leg. Kelley denied that Poore's boat was trying to overtake the PWC at the time of the collision.

On cross-examination, Kelley's testimony was impeached at several crucial points. Confronted with prior sworn testimony, Kelley conceded that she had never operated a PWC in Lake Herrington or on choppy water; that she had become nervous about the water conditions; and that while she had been eager to get out of the way of passing boats, she could not look out for other vessels while watching for waves.

Kelley was questioned about a diagram contained in her deposition which she had been asked to make to depict the lake and her path across the water. In her sketch, Kelley indicated that she travelled very nearly perpendicular to the shore, a course that is against the rules of the water. However, she insisted in her testimony both at the deposition *and at trial* that she travelled *parallel* to the shore. At trial, the defense tried to show that her sketch accurately represented what had happened—contrary to her oral denials. The defense claimed that Kelley had not been tricked into making an inaccurate drawing and that despite her denials at the deposition and under questioning at trial, her

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Ken-tucky Constitution and Kentucky Revised Statute(s)(KRS) 21.580.

sketch gave an accurate indication of her travel across the lake.

Poore, a fifty-five-year-old civil engineer, testified that he had been boating for more than thirty years. He indicated that he had experience with many kinds of watercraft and had been operating this particular boat for seven years. Poore testified that he had been boating on Lake Herrington regularly for four years and that he had taken his boat out every Sunday afternoon for months. Poore noted that on the day of the accident, it was very windy and the lake had been particularly choppy. As a consequence, he had been travelling slowly along a line parallel to the shoreline at about 100 feet from shore when the collision occurred.

Poore indicated that he kept a proper lookout; that he had an unobstructed view and had not observed any vessel within 200 feet of his vessel when he glanced at the fuel tanks behind him. When he again looked forward, Kelley's PWC was within five to ten feet of his vessel, and he was unable to avoid her. Poore testified that Kelley's PWC approached him at a 90–degree angle and that she was oriented directly toward the shore at a perpendicular angle. He said that the left side of his fishing boat collided with the PWC at its right side just in front of the handlebars.

Defense expert Robert Taylor, a marine engineer, studied the damage patterns on both vessels. The examination of Kelley's personal watercraft showed "crush damage" at its right side just in front of the handlebars. Taylor observed damage to the "left side, forward portion of [Poore's] boat." His reconstruction of the collision indicated that the vessels had impacted at a right angle.

At the conclusion of all the evidence, the jury deliberated for approximately thirty minutes. The jury concluded unanimously that Poore had not breached any duty to Kelley and returned a verdict in his favor. Judgment was entered, and this appeal followed.

■ We address Kelley's three arguments on appeal in the order in which they were presented. First, Kelley contends that the trial court erred by refusing to grant a directed verdict against Poore based on his failure to keep a proper lookout. Kelley claims that Poore's liability was proven by his admission that he looked but did not see Kelley approaching on the PWC. She observes that "[t]here was no explanation given by Poore or any other witness for why Poore did not see Kelley when she was on a wide open lake," and "it was improper for the trial court to allow the jury to consider the issue." Brief at 16.

■ When we review a judgment based upon a jury verdict, "all evidence which favors the prevailing party must be taken as true and ... [the] credibility or the weight which should be given to the evidence ... [a]re functions reserved to the trier of fact." *Gorman v. Hunt*, 19 S.W.3d 662, 671 (Ky.2000), citing *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459 (Ky. 1990). Additionally, "[t]he prevailing party is entitled to all reasonable inferences which may be drawn from the evidence." *Id.* Based on the evidence as summarized, the jury could reasonably have found that Poore consistently maintained a proper lookout but that Kelley failed to keep a proper lookout, failed to yield the right-of-way, and approached his vessel so suddenly that he did not have sufficient time to react before colliding with her. Under the circumstances, the trial court did not err by refusing to conclude as a matter of law that Poore acted negligently or that he breached his duty to keep a proper lookout. Consequently, the court did not err

in refusing to direct a verdict and in allowing the jury to consider this issue.

■ Kelley next contends that the trial court erred by failing to instruct the jury on the federal rules of the waterway. At trial, Kelley proposed a complex jury instruction based on federal maritime law. The proposed instruction set out the respective duties of vessels based on their relative bearings and on an overtaking vessel's intention to overtake. That instruction was rejected by the trial court. In pertinent part, the jury was instructed as follows:

> It was the duty of the Defendant, John S. Poore, in driving his boat to exercise ordinary care for his own safety and for the safety of other persons using the waterway, and this general duty included the following specific duties:
>
> (a) To keep a lookout ahead for other vessels in front of him or so near his intended line of travel as to be in danger of collision;
>
> (b) To have his boat under reasonable control;
>
> (c) To drive at a speed no greater than was reasonable and prudent, having regard for the waterway traffic and for the condition and use of the waterway;
>
> (d) To exercise ordinary care generally in order to avoid endangering the life or property of any person on the waterway;
>
> (e) To yield the right-of-way to vessels ahead and to his right; and
>
> (f) When overtaking another vessel, to yield the right-of-way to that vessel.

On appeal, Kelley argues that the trial court erred by failing to give her proposed instruction since federal law imposes additional duties upon a vessel "to assume she is overtaking and act accordingly if there is any doubt" and to remember that "any subsequent alteration of the bearing between the two vessels" does not transform the "overtaking vessel" into a "crossing vessel" or relieve the overtaking vessel of the duty to keep clear of the overtaken vessel "until she is finally past and clear." Appellant's Brief at 18. By failing to accept her tendered instruction, Kelley contends that the trial court unfairly modified Poore's duty of care. We do not agree.

■ Kentucky holds that there should not be an abundance of factual detail in jury instructions; instead, the instructions should provide only the "bare bones" of the question for the jury. *Hamby v. University of Kentucky Medical Center,* 844 S.W.2d 431 (Ky.App.1992). Moreover, the enumeration of specific duties in an instruction serves merely to amplify the requirement of the broad duty to use ordinary care under the circumstances without expanding the scope of that duty. *Id.* Additionally, Kelley's tendered instruction tended to overemphasize the requirements specific to overtaking.

Neither Kelley nor Poore testified that Poore's fishing boat was overtaking or intended to overtake Kelley's PWC. Instead, Kelley flatly denied it. Poore explained that he saw the PWC for the first time just an instant before the collision. Under these circumstances, it was not unreasonable for the court to reject Kelley's complex and technical proposed instruction defining Poore's duties as to overtaking Kelley's watercraft. On the contrary, the court's instructions to the jury fairly and accurately described Poore's duty of care. The enumerated specific duties adequately explained the general duty, and it was the role of Kelley's counsel to flesh out and to explain how Poore allegedly breached that duty. There was no error.

■ Finally, Kelley contends that the trial court erred by denying her motion *in limine* in which she sought to exclude evidence indicating that she was an inexpe-

rienced boater along with evidence to suggest that Poore was a practiced one. Kelley argues that the challenged testimony is prohibited by the provisions of Kentucky Rule(s) of Evidence (KRE) 404(a) that generally exclude "[e]vidence of a person's character or a trait of character" if it is to be used "for the purpose of proving action in conformity therewith on a particular occasion...." Kelley argues that Poore elicited the challenged evidence in an effort to show that she and Poore operated their respective vessels on the day of the collision in conformity with their individual characters. In support of her position, Kelley refers to an unpublished opinion of this court.

■ *Character* commonly refers to one's "fixed disposition or tendency." *See Black's Law Dictionary* 294 (4th ed. 1968). Testimony concerning an accident-free or accident-prone record is evidence of a driver's propensity (*i.e.,* character) for carefulness. Courts routinely hold that evidence of a driver's safe or unsafe driving record is immaterial and, therefore, inadmissible in a simple negligence case. *Hudelson v. Delta Intern. Machinery Corp.,* 142 Idaho 244, 127 P.3d 147 (2005). Thus, evidence of one's character for carefulness or carelessness for the purpose of showing action in conformity therewith is plainly inadmissible under the rule. *Garner v. Victory Exp., Inc.,* 214 Ga.App. 652, 448 S.E.2d 719 (1994).

The evidence challenged in this case concerns the nature and quality of Poore's experience operating boats and Kelley's lack of experience operating PWCs—especially in choppy water and specifically on this waterway. We are not persuaded that such a boating history qualifies as evidence of one's character or a trait of character. However, the evidence was probative in tending to explain how or why the collision between the boat and PWC occurred on

the day in question. The trial court did not err by denying the motion *in limine.*

We affirm the judgment of the Fayette Circuit Court.

ALL CONCUR.